Okay. Good morning, Your Honor. Forward. May it please the Court. My name is Phil Spirola from the law firm of Cipriani & Warner, and I'm here on behalf of Zurich American Insurance Company. This is a somewhat unique case, and it's an issue of first impression, certainly within the circuit, and certainly within West Virginia as well. This is a workers' compensation case that is disguised as a coverage action. The underlying individual, Mr. Gutierrez, suffered a catastrophic work injury at a coal site in the Wheeling, West Virginia area. Mr. Gutierrez was provided by a company called EIN. It's essentially a temp agency, a leasing entity, more commonly known in West Virginia as a professional employer's organization. Mr. Gutierrez, after he suffered this catastrophic work-related injury, filed a workers' compensation claim against his employer, EIN. EIN was the only named employer to the workers' compensation proceeding, to the extent there was a proceeding, in West Virginia. Under the West Virginia administrative scheme, the insurance carrier for the employer, here EIN, has a series of decisions that it's required to make upon receipt of a workers' compensation claim. It can choose to accept the claim. It can choose to reject the claim. If it chose to reject the claim, it could say, we're not the responsible employer. Some other entity is responsible. Theoretically, they could have tried to say that Taggert was the responsible employer. That could have resulted in significant litigation within the West Virginia administrative scheme for workers' compensation claims. It didn't. Instead, it sat on its rights for a period of several years, and after the underlying civil litigation between Mr. Gutierrez and several entities that he claimed were responsible for his injuries, decided to bring this coverage action in the Southern District of West Virginia. Zurich filed a motion to dismiss, arguing that the district court lacked jurisdiction to consider what really is a workers' compensation dispute. The district court denied the motion to dismiss. Discovery ensued, and cross motions for summary judgment were filed. It's Zurich's position that the district court erred, not only as finding that it had jurisdiction to consider this, but erred in its interpretation of the existing PEO agreement that was entered into between EIN and Taggert. Is Mr., is your, is the injured worker here, I'm not sure how to pronounce his name, going to continue to receive his workers' compensation benefits regardless of what happens in this lawsuit? Yes, Your Honor. And how can this be a workers' compensation case? Because the determination of which employer and which insurance company is responsible for the payment of a workers' compensation claim, that is something that is decided through the administrative process that the West Virginia legislature enacted to determine those things. Well, can you point to a specific statutory provision that gives exclusive jurisdiction to the West Virginia Workers' Compensation Commission to decide issues of insurance coverage as between insurance companies? There's no statute that addresses that, is there? There is no statute that specifically addresses that, Your Honor. What it does address is which entity is the correct employer. And as a result of identifying the correct employer, the coverage that follows determines who's going to be making those payments. Oh, no, I understand your argument about what ultimately means under the statute and how the statute is constructed. But that's a separate argument. That's a question whether the other insurance clause applies in this case. And I think, you know, you make a good argument. But as to the statute itself, the statute doesn't exclude or provide exclusive jurisdiction to the Workers' Compensation Commission. We would disagree, Your Honor, in terms of the Where is the statutory language that does that? The statutory language provides that the Workers' Comp administrative procedure requires a determination of the employer. And what Brick Street is attempting to do through its litigation that it filed in district court is substitute employers so that the court could then engage in other insurance analysis. That's the major factual premise that was flawed in the district court's decision and in Brick Street's argument. There is one employer that has been determined. I understand that. And the PEO agreement talks about EIN as being the party responsible to obtain and maintain Workers' Compensation Commission, compensation coverage. And the statute talks about PEO agreements, referring them to specifying to either the client employer or the PEO, either or, and then speaks ultimately. So I get your argument. But that argument goes to the merits of the district court's decision. That does not go to the district court's jurisdiction. Here's where we're going to respectfully disagree. Well, you have to have a statute, though, that makes it so, don't you, if you're talking jurisdiction? I don't believe so, Your Honor, because the premise upon which Brick Street is making its argument is that the employer would have to be switched. That's the only way that Zurich's coverage gets triggered. EIN was not insured by Zurich. Brick Street insured EIN. Exactly, and that's a merits argument, isn't it? It is a merits argument. I mean, I think it's a pretty good merits argument, but I don't understand why you're trying to plug it into the jurisdictional hole. The reason we are is because, Your Honor, the employer, and that's really what the underlying issue is to the coverage action. The employer is determined through the workers' compensation scheme. And so what Brick Street's argument is in the district court is we're going to switch that employer and we're going to say it's TAGR. Why isn't this resolved in the end simply as a matter of policy language, of the language of the respective policies? I mean, the difficulty I have I think is related to my colleagues. I don't see a statutory provision that overrides the policy language here, and I don't see a statutory provision which deprives the federal courts of jurisdiction through the assignment of some sort of exclusive jurisdiction if indeed they could do that. But I'm just not sure that there's something here that deprives the federal courts of a right to interpret the language of these different insurance policies. And to construe the West Virginia PEO statute in conjunction with those policies. You know, it may not be effective for you to put all your eggs in this basket. I appreciate that, Your Honor. And moving on to Judge Wilkinson's comment about the language of the policy. The reason the other insurance argument on behalf of Brick Street fails is because when you're looking at other insurance clauses of policies, they have to insure the same risk. And here they don't insure the same risk. Again, EIN is the only employer in the workers' compensation matter. Brick Street is the insurer for EIN. Because Zurich doesn't insure EIN. Zurich doesn't insure EIN, and that's your argument why the district court erred in just looking at the policy language and didn't construe it in relation to who is being insured. That is correct, Your Honor. Okay. That's it. I mean, that's your argument. Yes, Your Honor. And in addition, the PEO contract itself requires EIN to procure and obtain the workers' compensation insurance. It did that. It did what it was contractually obligated to do, and now its insurer is trying to shirk its responsibilities under its insuring agreement by trying to shift it to a non-party under the guise of they have other insurance clauses. And when you look at the totality of the circumstances, Taggart had insurance with Zurich in the event that EIN defaulted. EIN never defaulted. So there was never a reason for Taggart's policy to be triggered. Taggart was never sued in a workers' compensation matter, and it was just brought in belatedly through this effort to essentially recoup a significant amount of money on a catastrophic workers' comp case. And under the existing law, as it applies to other insurance, we believe it's entirely improper. When you're looking at the PEO agreement, it clearly defines the roles of the party. It clearly says that EIN is responsible. That's why EIN didn't fight the workers' complaint. You know, when Brick Street chose to accept it, it could have tried to have Taggart named, and then they could have tried to go down this road of other insurance. But they didn't do that, and so they can't do it now through an action in federal court. Thank you. Thank you. Mr. Parker, we'd be happy to hear from you, sir. Yes, Your Honor, thank you. If it pleases the Court. Let me address this basic question that Mr. Sperola brings up. There's a single spot in the record where it's actually at the hearing on our motions for summary judgment where Judge Goodwin, just to satisfy his own curiosity, asked me, so who did Mr. Gutierrez say his employer was when he made his workers' compensations? And I answered that question. I said, well, he said it was EIN because there's this contract. Mr. Gutierrez isn't the insured party. That's correct. EIN is, and EIN, a deserved policy, does not cover EIN. And other insurance, does it not apply to situations where the same party is insured by two different insurance companies that cover the same risk? And if you don't have EIN, if you don't have EIN being insured by Zurich, how do you have an other insurance situation? Because we have Taggart being insured by Zurich, and we have Taggart along with EIN being insured by Brick Street. But don't you have to read the language? It seems to me, and I'm from Virginia, I'm not from West Virginia, even though I love West Virginia, you have to read the PEO agreement in conjunction with the statute. It seems to me that the statute creates a statutory employer relationship, we call it in Virginia, by making Taggart, the client employer, ultimately liable under the code. It doesn't say it's liable on a co-responding basis. It's ultimately liable. It seems to me that your position is trying to read ultimately out of the statute. Why is it not? No, Your Honor, because if you take a look at that statute, there's nothing in the statute that creates a priority of coverage as between the two policies that must be purchased. The PEO statute does say that the PEO will buy insurance to cover both the PEO and the client employer, but then it also says that the client employer must also keep its own coverage. Now, there's nothing in the statute that says one takes priority over the other. I have said in my brief, and it is the truth, it is reasonable for Zurich to want the result that it's asking you to impose. The problem is that the solution for Zurich would have been to write a better policy. Okay, but what about the fact that the statute says that the responsibility to obtain workers' compensation coverage shall be specifically allocated in the PEO to either the client employer or the PEO? So doesn't the statute contemplate that there's going to be a single person, a single entity that is responsible, and that if that entity defaults, the other entity is going to be ultimately responsible? So your only problem is that that second part of what you just said is not in the statute. Well, no, I'm just saying isn't that when you read the one part of the statute that talks about either or, and then you read the other part of the PEO statute that talks about ultimately, isn't the necessary construction of reading those two together, saying in the beginning, the PEO agreement has to identify either the client employer or the PEO as the person responsible for workers' compensation coverage. And then in the other statute, talking other part of the statute, says that in any event, the client employer shall at all times remain ultimately liable. Now, doesn't ultimately suggest that once the election is made in the PEO agreement between either the client employer or the PEO, that notwithstanding, if the PEO is primarily on the hook, the client employer is ultimately liable? Your Honor, I think that that's reading further than the statute allows. But let's assume that you're right about that. There's a difference between a ceiling and a floor. If we read the statute that way to say that, okay, both of them must buy insurance, in other words, the PEO must buy insurance for both the PEO and the client employer, and the client employer must also buy insurance. If we assume that there is this priority of coverage built into the statute, the problem is that what happens when the carrier for the client employer provides a broader coverage to the client employer than what that statute requires? I mean, what you're saying is if you read the statute, it creates this priority of coverage, but that priority of coverage needs to be reflected in the insurance policies because as Judge Goodwin found, when you take a look at the statutes and the regulations, there's nothing in these statutes and regulations that trumps the language of the insurance policy. Okay, how do you reconcile the language of ultimately in the PEO statute with the language of either or? Because, Your Honor, ultimately is really meant to suggest that. Let me put it this way. The legislature was concerned about making sure that there were no workers who would fall between the cracks. So it required both, I mean, if the responsibility for buying work compensation for these covered employees is allocated to the PEO, then the PEO clearly has to buy coverage. Right, and the PEO allocates priority. It allocates the priority to EIN. Well, no, not in terms of the insurance policy. It says, shall obtain and maintain. Why isn't that an allocation of priority? It is a requirement that the PEO buy an insurance policy, but there's another responsibility in the same agreement that says, the client employer will also buy insurance. So remain ultimately responsible. In order to make sure that no workers fell between the cracks, the legislature called for both to buy insurance. Now, there's nothing in the statute that specifically Are they insuring? So you're saying that necessarily their insurance obligations are co-equal, irrespective of the statute setting up an either-or construct. Your Honor, my point really is that it's down to what the insurance policies say. It would have been... Don't you have to read, though, the PEO agreement in conjunction with the statute and the policy? It seems to me that... And maybe I'm wrong about this. I'm an old workers' comp nerd from Virginia, so maybe there's something I'm missing here. But it seems to me that what the district court did was looked at the policies, one versus the other, and didn't analyze the PEO agreement in relation to the PEO statute and then examined the policies with regard to both of those other PEO-related provisions. I'll need to disagree with you, Judge Keenan, because I do believe that Judge Goodwin did do that analysis. But when he did the analysis, he found that there's no part of either the PEO statute or the PEO agreement here that specifically says that one of these two insurance policies that must be purchased has a priority over the other. Now, so really when you look at that, plus taking a look at the regulations, the PEO regulations, it's interesting that the section that deals with priority of coverage has three sections first that say, here's how these policies should interact, and then there's a section at the bottom, section 6.4, that says none of what we just said should interfere with the rights of the parties to an insurance policy. And so contrast that with what happens... The first case you all heard was about some UIM coverage in South Carolina. And there was some mention of the fact that there may be policies that are sold that don't comply with statutory requirements. Well, it's pretty easy in West Virginia to say, well, we know what's going to happen. The policy has to be reformed to conform to the statutory requirements. All right, well, that's not really an issue here because the language in the contracts track the PEO statute, do they not? Well, they do. But also what I'm getting at is there's nothing in the regulations that says what I just described in the auto world happens with this. What happens here is the insurance policies take priority over those regulations. That's section 6.4 of the PEO regulations. But policies can't trump the statute. Yet there's nothing in the statute that says one policy takes priority over the other. But even if there were, if we read that into the statute, Your Honor, but really my point is that that creates a floor, not a ceiling. In other words, so the PEO buys an insurance policy. And the client employer must keep a policy, let's say, in reserve or as a backup plan. That sounds like the way you would like for us to read that. That's not an unreasonable thing to want. It's not in the statute, but let's say that it is. The point here is that Zurich should have protected itself by writing an insurance policy that specifically addressed PEO agreements. And it did not. You know, we did. We sold an insurance policy to EIN that would cover both EIN and TAGR. And we made sure to say the policy. Now, this policy only deals with the covered employees. In other words, the least employees. It does not cover other employees. Zurich should have done the same thing. In fact, if you take a look at the Christopher Bogdan article that Mr. Cibrola had cited in his brief, and I make reference to it too, it makes this very clear that the way the PEO market works is the insurance carriers need to be careful about how they write the policies. Because if you're not careful, then you may have provided broader coverage to the insured than you wanted to. And that's exactly what happened here. What happened here is that Zurich provided a policy to TAGR Global, which is a parent corporation for TAGR site services, that doesn't differentiate between different types of employees. You're not contending that Zurich is responsible for the entire round, are you? No, no, not at all, Your Honor. I mean, what you're seeking is 50-50? That's exactly right. Because when you read the two insurance policies, like most of these insurance policies, they have other insurance provisions, and both of them say equal shares. So the language in the policy that you're hanging your hat on is the word that both of the relevant provisions seem to be written almost identically. They're standard policies, Your Honor. So the way you get the 50-50 is by the language, our share of the benefits. The language, our share, presupposes, at least in your view, some kind of sharing. And then there's a reference to other insurance. And then they talk about the shares being equal. Yes, Your Honor. And I understand that part of the argument, but I'm still struggling with the point Judge Keenan made about whether some sort of statutory provision overrides that policy language. I think that the real... Because it can, if it wants. I think a better question would be, Your Honor, does the statutory language take... Is there a statute that specifically says, these insurance policies that get sold in this arena have to do the following? Have to do what? Well, whatever it is that we might require. So in other words, if there were a statute, if there were part of this PEO statute that said, okay, insurance policies that are sold in this arena for PEO agreements, they have to say the following? Obviously, even if our policy said something different, we would have to conform our policy to meet those obligations. The problem is, there is nothing like that in the PEO statute. What about the fact the PEO statute says that the responsibility to obtain workers' compensation coverage shall, in the PEO agreement, be specifically allocated to either the client employer or the PEO? The statute contemplates that one person is going to be identified in the PEO as the person responsible to obtain workers' comp coverage. Isn't that correct? Yes, Your Honor. And that is what happened. Okay, and then the statute says if the responsibility is allocated to the PEO under the agreement, then it goes blah, blah, blah, but ultimately says the client employer shall remain ultimately liable to provide workers' compensation coverage. Yes, Your Honor. And so where we part company is, you say ultimately means they're on the hook the whole time from day one. There's no contemplation in the statute that there's a default and that the statute puts them in this position, even though the PEO agreement allowed them not to be responsible. The statute puts them in the position of being responsible because the other party has defaulted. So what you're saying ultimately means they're responsible from the very first day of the PEO agreement. Isn't that correct? Yes, but I want to make sure I'm clear. Being ultimately responsible means they have to go buy insurance. That's the practical explanation. From day one. Yes, and they did. I mean, they did buy insurance. Right, right. But the contract on day one did not allocate them responsibility to have workers' compensation coverage to obtain and maintain it. But the law does. I mean, the problem is that under this PEO scheme, you'll see, and we've cited these in our briefs, that there's nothing about having a PEO agreement that allows the client employer to disregard its obligations. Is this case to certify to West Virginia? You could, if you want to. I know. Is it a good case, though? Well, you know, some cases aren't good. You know, we could. Yeah, we could. Should we be construing their statute? You see what I'm saying? I do see what you're saying. You could. I think that when you get down to it, this is a more simple case. And I really, it's important since I only have four minutes left, I want to make sure I come back to something that Mr. Spirola said because it's very important. You know, first of all, it's not the case that EIN is a temp agency, and so I want to make sure I say that. The statute, the PEO statute, specifically excludes temp agencies. So there's plenty of case law that Mr. Spirola has cited that just doesn't have any application. But the more important point is he was saying that EIN was the only chargeable employer. Your Honor, that's just not the way this works under a PEO agreement. But how is this handled as a matter of custom and practice? I mean, just if we could, and I realize that's a very difficult thing to say. We've been over the statute, and we've been through the policy language. But instinctively, it seems to me that a PEO would normally be the one expected to provide insurance for the employees that it was recommending. Yes. And so that would, and it would normally be, wouldn't it normally be their exclusive responsibility to provide insurance for the employees that they were shipping out and everything? I mean, that would be one of the services that a company like Taggert would come to expect. I mean, just instinctively, wouldn't a company like Taggert say, well, part of the service a PEO is giving me is they're going to provide the insurance? It's a reasonable thing to expect. However, the law does require the client employer to keep its own insurance. But here's the critical thing. Again, I only have two minutes. I want to make sure I have time. The other kind of things. Who, for example, does the withholding of taxes? Who pays the share of the workers' comp benefits? Who handles the general paperwork, the Social Security, the workers' comp? EIN does, Your Honor. And it's Taggert that tells the employer where to go. But what I'm saying is, isn't this customarily insurance part of the bundle of services that a PEO provides an individual employer like Taggert? Because this is what they're looking to get from the PEO. They're looking to get out of extensive paperwork. Yes. And insurance is part of that. And so that's what concerns me here about the 50-50 relationship is that it just may undercut the bundle of services, most prominently including the paperwork that a PEO provides. It's part of what they do, and it's part of why other companies sign up with them. And that's what – and I realize that doesn't – you and my good colleague have had an interesting dialogue on the part of the statute, and I'm troubled by the question that Judge Keenan has raised about the either-or language and things. But I'm just – it's this other part that nags at me that this is something I would expect a PEO to do. And it's – I realize that's not a strictly – I realize that's not a strictly legal point, but could you give me a level of comfort with my concern? Yes, I can, Your Honor. I am out of time, but if you'd allow me to go on. I want to hear the answer. Your Honor, we're not trying to upend the system. You're absolutely right. This is something that the client-employer should expect from the PEO. However, the law does require the client-employer to keep its own insurance, and here is the crux of it. That insurance policy that was purchased from Zurich is broader than it needed to be in order to address your concerns. In other words, let's assume that the statute is to be read exactly how Judge Keenan believes it should be. That doesn't change the fact that Zurich sold a policy that doesn't differentiate between different types of employees. And because it was broader than it needed to be under the way that Judge Keenan reads the statute, Zurich has to live with the consequences of that. The last thing I need – I really – I feel like I need to say because it's important. This worker's compensation claim, Brick Street administered it on behalf of both EIN and Taggart because there's no other way to do that in the context of a PEO agreement. It requires – yeah, but you're saying that the statute requiring an employer to keep insurance, that doesn't say anything about when the requirement to pay arises, does it? Well, the requirement to pay is driven by what's in the policy, Your Honor. So, I mean, or more simply, when a worker gets hurt on the job, there is a requirement to pay. And hopefully, the employer has obtained insurance to meet that obligation. That's exactly what happened here. It's just that when Brick Street administered this claim, it did not – it's so important that I stress this point – it did not just administer a claim for EIN because Mr. Gutierrez had two employers. By law, there's no question about that. He had two employers at the same time. Both of those employers were insured under the Brick Street policy. So when Brick Street paid those millions of dollars, it paid those millions of dollars on behalf of both. Just did it out of the goodness of its heart. No, no, absolutely. And four years later, decided that it might be able to book in the other insurer. It did it because the policy required it to do it. But here's the important point. On behalf of both EIN and Taggart, they were both Mr. Gutierrez's employers. And because they were both his employers, then there's other insurance. It's not the usual circumstance that you pay out a few million dollars and wait years to ask the other entity to kick in. We honestly didn't know about their policy. We didn't learn about it until there was a deliberate intent settlement being put together. We literally did not know about it. Do you have any further questions? Thank you. Once you have some rebuttal time, we'd be happy to hear from you. I will be very brief, Your Honor. The only named entity to the workers' compensation claim as admitted by Brick Street was EIN. But how do you answer Mr. Parker's argument? He's making a pretty fair argument. He's saying, okay, I will grant you that the statute doesn't require you to do it, but you did it anyway by your policy language. How do you answer that? We insured Taggart in the event that Taggart was ever ordered to pay workers' compensation. Okay, what about the policy language says that? Well, in the insuring agreement, it says that Zurich is legally obligated. I may get the blank right, but it's in the insuring agreement. Zurich is legally obligated to pay any claims for which it is insured has been ordered to pay. There has never been an order in a workers' compensation forum that Taggart ever pay benefits to or on behalf of Mr. Gutierrez. You're saying because Taggart was never ordered to pay. Correct, Your Honor. There was no corresponding obligation of Zurich to pay. Correct. Because, as Your Honor, I'm sure is very familiar, each insurance policy, there's various aspects. And each policy starts with something called the insuring agreement, which sort of sets forth when a policy is triggered. And here, Taggart was never legally required to pay benefits. We're not here to deal with a hypothetical of going back and redoing the workers' compensation proceeding where Taggart may have been, at some point, obligated to pay it, at which point it would have triggered a long appellate process through the administrative system to determine whether or not Taggart was properly named in the workers' compensation claim. That didn't happen. What do you think about the idea of certification? Honestly, it crossed our minds. I mean, is this a good one for certification? I don't mean any pun there. But is it an appropriate case or not? Because, I mean, we are being asked to do something that West Virginia could probably do much better, aren't we? And you did say it was a case of first impression. That is correct, Your Honor. Again, it was something that we considered. Obviously, we have faith in the Fourth Circuit to be able to make a ruling on this. We would defer to the court as to whether I think certification is appropriate in this matter. But we believe that this court certainly has the power to make the decision in this matter. The other aspect I'd like to address of Brick Street's argument is let's assume that Judge Goodwin's decision stands, and we are now forced to deal with the situation of a pro-rat of sharing on the benefits moving forward. Because Taggart and Zurich were never parties to the underlying workers' compensation matter, if we disagree with a payment that needs to be paid on behalf of Mr. Gutierrez, there is no administrative mechanism by which Zurich could jump in and say, you know, we disagree with this particular payment. We don't believe it's medically necessary because we don't have standing. We were never a party to it. So it creates sort of a practical administrative nightmare between the two carriers. Well, and going back to your jurisdictional argument, if we did certify, it would give a chance for West Virginia to clarify that argument as to which is the proper form, or is there more than one appropriate form for insurance coverage disputes?  Are there any questions? Thank you. All right. Thank you. We'll come down and re-counsel and then move into our final case.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Stephanie D. Thacker